# "Exhibit 2"

## PURCHASE AGREEMENT

This AGREEMENT ("Agreement") made and entered into this 17th day of July, 2007, by and between BLOCK & BARREL, INC., a West Virginia corporation with offices currently located at 184 Sherwood Drive, Bridgeport, West Virginia 26330 (sometimes hereinafter referred to as "Buyer"), and SAMUEL OLIVERIO and CHERYL JEAN OLIVERIO, individuals currently residing at 570 Glen Avenue, Bridgeport, West Virginia (sometimes hereinafter referred to collectively as "Sellers").

WHEREAS, Sellers own one hundred percent (100%) of the membership and distributional interests of Jass Video Investments, LLC ("Jass Video");

WHEREAS, Sam Oliverio owns fifty percent (50%) of the membership and distributional interests of both G & S Tobacco Dealers, L.L.C. ("G&S") and Wilmon Food Industries, L.L.C. ("Wilmon") (hereinafter Jass Video, Wilmon and G&S will be referred to collectively as "the Companies" or singly as a "Company".)

WHEREAS, Sellers wish to sell, and Buyer wishes to buy, all of Sellers' interests in the Companies, all on the terms and conditions herein provided.

NOW, THEREFORE, for and in consideration of the mutual covenants hereinafter contained, the receipt and sufficiency of which is hereby acknowledged by all parties hereto, the parties first mentioned above do hereby agree each with the other as follows:

## Article 1 - Sale of Interests

Sellers do hereby convey, sell, assign and transfer to Buyer, for the consideration hereinafter stated, all of their membership interests and distributional interests in, and all other right and title in, all of the Companies free and clear of all liens, charges or other encumbrances (collectively the "Interests").

## Article 2 - Consideration

The consideration for all of the conveyances, transfers, arrangements and agreements provided in this Agreement paid from Buyer to Sellers is the sum of One Million Forty-Eight Thousand One Hundred Eight Dollars and Ten Cents ($1,048,108.10) (the "Consideration").

The Consideration will be paid by Buyer to Sellers at Closing in the following manner:

    (a)    Five Hundred Twenty-Four Thousand Fifty-Four Dollars and Five Cents ($524,054.05) in cash; and

    (b)    A promissory note in the principal amount of Five Hundred Twenty-Four Thousand Fifty-Four Dollars and Five Cents Dollars ($524,054.05) and guaranty agreement and personal guaranty substantially in the form as attached hereto as **Exhibit 2(b)**.

{R0227337.2}

### Article 3 - Obligations of Sellers

Except as may be expressly agreed to by Buyer in writing at the Closing, Buyer shall have no responsibility for any obligations, liabilities or payables of Jass Video incurred prior to Closing, of any type, kind or nature, whether fixed, accrued or contingent, or as a result of the violation of law, contractual default, or otherwise, and all such obligations shall remain with Sellers.

### Article 4 - Closing; Closing Documents

**4.1** **Date, Time, Place.** The closing under this Agreement (herein referred to as the "Closing") shall take place on July 17, 2007, at 1:00 p .m. at the offices of Robinson & McElwee PLLC in Clarksburg, West Virginia, or at such other time and place as agreed to by the parties in writing.

**4.2** **Instruments of Assignment; Non-Competition Agreement.** At Closing, Sellers shall duly execute and deliver to Buyer: (a) Sale and Assignment of Interest Agreement substantially in the form as attached hereto as **Exhibit 4.2 (A)**, and (b) a Confidentiality and Non-Competition Agreement substantially in the form as attached hereto as **Exhibit 4.2 (B)**.

**4.3** **Consents.** At Closing, Sellers shall obtain and deliver to Buyer all consents or certificates of landlords, contractual parties, governmental agencies or others as is necessary or desired by Buyer to effectuate the transactions contemplated herein.

**4.4** **Allocation of Closing Costs.** Each party shall be responsible for and bear all of its own transactional costs and charges relating to the purchase and sale of the Interests contemplated herein.

**4.5** **Ad Valorem Taxes and Fees.** All ad valorem taxes, license and permit fees for 2007 related to Jass Video shall be prorated on a calendar year basis as of June 30, 2007.

**4.6** **Resignations.** Sellers shall at Closing resign all of their positions held with the Companies, and execute all such necessary and convenient documents evidencing the same.

**4.7** **Automobiles.** At Closing, Jass Video shall transfer title to its 2006 Lincoln and 2006 Chrysler to Sellers in exchange for Sellers assuming all debt with regard to such automobiles.

**4.8** **Other Actions and Instruments.** Buyer and Sellers shall take such other actions and shall execute and deliver such other instruments, documents and certificates at the Closing as is required by the terms of this Agreement or as may be reasonably required to effectuate the terms of this Agreement and are requested by Buyer or Sellers in connection with the Closing of the transactions contemplated by this Agreement.

{R0227337.2}

2

## Article 5 - Representations and Warranties of Sellers

Unless disclosed to the contrary on the disclosure statement attached hereto as **Exhibit 5** and incorporated herein by reference, Sellers represent, warrant and covenant to Buyer as follows:

**5.1.    Valid Corporate Existence; Qualification.**  Each Company is a limited liability company duly organized, validly existing and in good standing under the laws of the State of West Virginia.  Each Company has the corporate power to carry on its business as now conducted and to own its assets, and is qualified to do business as a foreign corporation in those jurisdictions in which the conduct of its business requires it to be so qualified.

**5.2.    Authority; Binding Nature of Agreement.**  Sellers have the power to enter into this Agreement and to carry out their obligations hereunder.  This Agreement constitutes the valid and binding agreement of Sellers and, assuming that this Agreement constitutes the legal, valid and binding agreement of the other parties, is enforceable in accordance with its terms subject to applicable bankruptcy, reorganization, insolvency and similar laws affecting the rights of creditors and subject to general principles of equity.  Sellers have the legal right, power and authority to enter into this Agreement and to transfer to Buyer the Interests and other rights which are the subject of this Agreement free of any and all claims, encumbrances or other charges.

**5.3.    No Breach.**  Neither the execution and delivery of this Agreement nor compliance by Sellers with any of the provisions hereof, nor the consummation of the transactions contemplated hereby, will:

(a)    violate or conflict with any provision of the Articles of Organization, operating agreement or other applicable agreement or writing governing any Company;

(b)    violate or, alone or with notice or the passage of time, result in the breach or termination of, or otherwise give any contracting party the right to terminate, or declare a default under, the terms of any agreement or other document or undertaking, oral or written, to which any Company is a party or by which any Company and/or Sellers or any of their properties or assets may be bound (except for such violations, conflicts, breaches or defaults as to which required waivers or consents by other parties have been, or will, prior to the Closing, be obtained);

(c)    result in the creation of any lien, security interest, charge or encumbrance upon any of the properties or assets of any Company or upon the Interests sold hereunder;

(d)    violate any judgment, order, injunction, decree or award against, or binding upon, any Company and/or Sellers or upon their properties or assets; or

{R0227337.2}

3

(e)    violate any law or regulation of any jurisdiction relating to any Company and/or Sellers or any of their securities, assets or properties.

5.4    **Title to Interests.**  Sellers are the lawful owners of, have good and valid record and marketable title to, and have the full right to sell, convey, transfer, assign, and deliver the Interests, without any restrictions of any kind whatsoever.  Except as shall be disclosed to and accepted by Buyer prior to Closing, all of the Interests are entirely free and clear of any security interest or encumbrances of any kind, or restrictions against the transfer or assignment thereof, and there are no options, warrants, rights or calls or other agreements or commitments to which Sellers or the Companies are a party or by which Sellers or the Companies are bound.

5.5    **Locations; Compliance with Laws.**

(A)    Each Company and Sellers have complied with all applicable laws, rules, regulations and ordinances of any governmental agency or body with respect to the conduct of their business;

(B)    The business locations of the Companies (the "Locations") are set forth on **Exhibit 5.5** attached hereto, and all tenant improvements at the Locations have been constructed, erected, operated and maintained at all times in accordance with all applicable statutes, rules, regulations and ordinances in the State of West Virginia; and

(C)    All Locations are situated in areas properly and adequately zoned for the business activities conducted.

5.6    **Leases.**  Except as disclosed on **Exhibit 5.6**, at Closing each Company shall, as of and after Closing, have in full force and effect with no defaults commercially reasonable written leases with a remaining term of at least five (5) years for each non-Company owned Location ("the Leases") free and clear of all encumbrances and restrictions; provided, however, that Sellers shall remain liable for any and all liabilities with respect to the Leases which are a result of the Company's actions prior to July 1, 2007.  Further, with respect to each and every lease constituting the Leases:

(A)    A complete, true and accurate copy of all leases of real property and personal property maintained by the Companies (the "Leases"), and all amendments or modifications thereto, are attached hereto as **Exhibit 5.6 (A)** and incorporated herein by reference;

(B)    All Leases are in good standing and in full force and effect;

(C)    There are no defaults of any lessor under the Leases;

(D)     All rent due and owing under the Leases has been timely paid;

(E)     There are no defaults under any of the Leases, nor any existing conditions which, upon the giving of notice or lapse of time or both, would constitute a default under the Leases;

(F)     The transfer of the Interests from Sellers to Buyer hereunder does not require the consent of the lessor; and

(G)     The named lessors under the Leases are the true owners of the parcels of real property and/or items of personal property which are the subject of the Leases.

5.7     **Permits.** **Exhibit 5.7** sets forth all permits, licenses, orders and approvals from all federal, state, local and foreign governmental regulatory bodies held by the Companies and/or Sellers (the "Permits"), and all such Permits constitute all permits, licenses, orders and approvals of all federal, state and local governmental or regulatory bodies required of the Companies and/or Sellers to carry on their business as presently conducted. The Companies and Sellers are in compliance in all material respects with all requirements, standards and procedures of the federal, state and local governmental bodies which have issued such Permits. There is no known challenge or inquiry pending with regard to any Permit. Further:

(A)     Each Company and/or Sellers have timely and properly obtained, displayed and maintained in full force and effect all necessary and required governmental permits, licenses, consents and authorizations required to operate and maintain the Locations and to otherwise conduct their business, and all such permits, authorizations and consents are attached hereto as **Exhibit 5.7**;

(B)     Each Company and/or Sellers have complied with all requirements and duties owed by a holder of the Permits; and

(C)     No notice or citation has been received by any Company and/or Sellers from any governmental agency or body alleging any failure to comply with any requirements or duties under the Permits or otherwise with respect to the Locations or their business.

5.8     **Regulatory Approvals.** Performance of the terms and conditions of this Agreement by Sellers does not require notification to nor the consent of any third party or any governmental instrumentality. All consents, waivers, approvals, authorizations or exemptions from governmental entities and others prescribed by any law, rule or regulation which must be obtained or satisfied by any Company and/or Sellers in order to permit the consummation of the transactions contemplated by this Agreement have been

{R0227337.2}

5

obtained or satisfied, except as otherwise expressly set forth on **Exhibit 5.8** attached hereto.

5.9    **Certain Tax Matters.** Each Company has duly filed all federal, state, and local income, excise or franchise tax returns, personal property tax returns, sales and use tax returns, employee tax and contribution returns, and all other tax returns and reports required to be filed by them, and each Company has paid all taxes owing except taxes not yet due and payable (which taxes have been adequately reserved). Neither the Internal Revenue Service, the State of West Virginia nor any other taxing authority is now asserting or threatening to assert against any Company any deficiency or claim for additional taxes or interest thereon or penalties in connection therewith.

5.10    **Litigation; Compliance with Laws.** No Company has been served with any notice of any legal proceeding and there is no material suit, action, claim, investigation, arbitration, administrative or legal or other proceeding or governmental investigation pending or threatened against any Company, nor has any Company violated any law, regulation, order, writ, injunction, judgment, or decree of any court or federal, state or local department, official, commission, authority, board, bureau, agency, or other instrumentality applicable to them or their business which would result in giving any person the ability to cause the rescission of the transaction contemplated hereunder or create a claim against the Interests.

5.11    **Judgments, Etc.** There are no unsatisfied judgments, decrees, orders, writs, injunctions or awards of any court or government or agency against either Company.

5.12    **Environmental.** Each Company has complied in all material respects with all applicable federal, state and local environmental laws to which it is subject, and have not received written notice of potential violation of, or liability under, any such environmental laws, and have obtained all permits, licenses or other authorizations required for its operations under the foregoing environmental laws. There are no environmental liabilities or exposures associated with any Company or any of the Locations.

5.13    **Material Contracts.** Sellers have delivered to Buyer the original or an accurate copy of all contracts to which each Company is a party.

5.14    **Insurance.** Each Company is adequately insured and Sellers have delivered to Buyer certificates of insurance or similar documentation showing the insurance presently maintained by each Company.

5.15    **Debts.** Other than as disclosed on **Exhibit 5.15** attached hereto, each Company is debt free as of the date hereof and all expenses and other payables including payments to operators are current as of July 1, 2007.

{R0227337.2}

**5.16   Minutes.**   Sellers have delivered to Buyer an accurate copy of the Operating Agreement and all other organizational documents including minutes for the Companies.

**5.17   Financials.**   Sellers have delivered to Buyer the most recent financial statements (balance sheet and profit and loss statement) for each Company, copies of which are attached as **Exhibit 5.17** and said statements do not fail to disclose any liability which would have a material adverse effect on the business, operations, properties, assets or financial condition of a Company. Each Company has good and marketable title to, or a valid leasehold interest in, the properties and assets used by it, wherever located, free and clear of all liens and encumbrances of any kind, except for properties and assets disposed of in the ordinary course of business.

**5.18   Employee Plans; Employees.**   Each Company is current and in full compliance with any and all employee benefit plans and programs whether such plan or program is privately sponsored or governmentally imposed such as worker's compensation and unemployment security. Attached as **Exhibit 5.18** and incorporated herein by reference is a list of all employees of each Company together with the salaries, benefits and other compensation applicable to each, as well as the dates of hire. Also attached on such **Exhibit 5.18** are all employment contracts and employee manuals and/or policies which have been distributed and/or applied to the employees of each Company.

**5.19   Brokers.**   Sellers have not retained, utilized, or been represented by any broker or finder in connection with the transactions contemplated by this Agreement.

**5.20   Cash on Hand at Closing.**   At Closing each Company will have the cash, cash equivalents, prepaid expenses and deposits shown on **Exhibit 5.20**.

**5.21   Records, Keys and Passwords.**   Sellers have delivered physical possession to Buyers or will do so at Closing all records, documents, files (electronic or paper), keys, code or passwords, credit cards, debit cards, phone cards, cell phones and other similar tangible and intangible property owned or used by any Company.

**5.22   No Affiliates.**   There are no business entities controlled by any Company. As used herein, "controlled by" means (i) the ownership of not less than fifty percent (50%) of the voting securities or other interests of a business entity, or (ii) the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a business entity, whether through the ownership of voting shares, by contract or otherwise. None of the Companies have made any investment in, and do not own, any capital stock of, or any other proprietary interest in, any other business entity that is not reflected on their respective books and records.

**5.23   Banking Arrangements.   Exhibit 5.23** sets forth the name of each bank, institution or agency in or with which each Company has an account, credit line or safety

deposit box, and a brief description of each such account, credit line or safety deposit box.

**5.24    Untrue or Omitted Facts.**  No representation, warranty or statement by Sellers in this Agreement contains any untrue statement of a material fact, or omits or will omit to state a fact necessary in order to make such representations, warranties or statements not materially misleading.  Without limitation of the foregoing, there is no fact known to Sellers that has had, or which may be reasonably expected to have, a material adverse effect on or any of the assets, properties, operations or businesses of any of the Companies and that has not been disclosed in writing to Buyer.

## Article 6 - Representations and Warranties of Buyer

Unless disclosed to the contrary on the disclosure statement attached hereto as **Exhibit 6** and incorporated herein by reference, Buyer represents, warrants and covenants to Sellers as follows:

6.1.    **Valid Corporate Existence; Qualification.**  Buyer is a corporation duly organized, validly existing and in good standing under the laws of the State of West Virginia.  Buyer has the corporate power to carry on its business as now conducted and to own its assets.

6.2.    **Corporate Authority; Binding Nature of Agreement.**  Buyer has the power to enter into this Agreement and to carry out its obligations hereunder.  The execution and delivery of this Agreement and the consummation of the transactions contemplated hereby have been duly authorized by Buyer's shareholders and directors, as applicable, and no other corporate proceeding on the part of Buyer is necessary to authorize the execution and delivery of this Agreement and the consummation of the transactions contemplated hereby.  This Agreement constitutes the valid and binding agreement of Buyer and, assuming that this Agreement constitutes the legal, valid and binding agreement of the other parties, is enforceable in accordance with its terms subject to applicable bankruptcy, reorganization, insolvency and similar laws affecting the rights of creditors and subject to general principles of equity.

6.3.    **No Breach.**  Neither the execution and delivery of this Agreement nor compliance by Buyer with any of the provisions hereof, nor the consummation of the transactions contemplated hereby, will:

(a)    violate or conflict with any provision of the Articles of Incorporation, Bylaws or other applicable agreement or writing governing Buyer;

(b)    violate or, alone or with notice or the passage of time, result in the material breach or termination of, or otherwise give any contracting party the right to

{R0227337.2}

8

terminate, or declare a default under, the terms of any agreement or other document or undertaking, oral or written, to which Buyer is a party or by which any of them or any of its properties or assets may be bound (except for such violations, conflicts, breaches or defaults as to which required waivers or consents by other parties have been, or will, prior to the Closing, be, obtained);

(c)    result in the creation of any lien, security interest, charge or encumbrance upon any of the properties or assets of Buyer or pursuant to the terms of any such agreement or instrument;

(d)    violate any judgment, order, injunction, decree or award against, or binding upon, Buyer or upon its properties or assets; or

(e)    violate any law or regulation of any jurisdiction relating to Buyer or any of its securities, assets or properties.

**6.4    No Consents.** Performance of the terms and conditions of this agreement by Buyer does not require notification to nor the consent of any third party or any governmental instrumentality other than the West Virginia lottery.

**6.5    No Litigation.** There is no litigation pending or threatened against Buyer.

**6.6    Brokers.** Buyer has not retained, utilized, or been represented by any broker or finder in connection with the transactions contemplated by this Agreement.

**6.7    Untrue or Omitted Facts.** No representation, warranty or statement by the Buyer in this Agreement contains any untrue statement of a material fact, or omits or will omit to state a fact necessary in order to make such representations, warranties or statements not materially misleading. Without limitation of the foregoing, there is no fact known to the Buyer that has had, or which may be reasonably expected to have, a material adverse effect on or any of its assets, properties, operations or businesses and that has not been disclosed in writing to the Seller.

## Article 7 - Conditions Precedent to Buyer's Obligation to Close

All obligations of Buyer to be performed at the Closing are subject to the fulfilment, prior to or at Closing, of each of the conditions hereinafter set forth in this Article. Nothing in this Article shall limit or restrict any rights or remedies which Buyer may have by reason of any misrepresentation, breach of warranty or nonfulfillment of any covenant, agreement or obligation by Sellers under or pursuant to this Agreement.

**7.1    Satisfactory Financing.** Buyer shall have been able to obtain financing to assist in the payment of the Consideration on such terms as are acceptable to Buyer in its sole discretion.

{R0227337.2}

**7.2    Representations and Warranties.**  The representations and warranties of Sellers contained in this Agreement, as well as data and other information provided to Buyer orally or in any written statement or in any other document delivered pursuant hereto or in connection with the transactions contemplated hereby, shall be true and accurate at the time made and as of the time of Closing as though such representations and warranties were made at the time of Closing.

**7.3    Covenants.**  Sellers shall have performed and complied in all material respects with all covenants and agreements required by this Agreement to be performed or complied with by Sellers prior to or at the Closing.

**7.4    No Material Change.**  There shall have been no material change in the Leases, Permits, or business operations of any Company prior to Closing.

**7.5    Assignments and Consents.**  Buyer shall, in its sole discretion, deem the terms of the Leases as acceptable to Buyer, and all appropriate lessors and other parties shall, as necessary, give their consent to the assumption of the Leases by Buyer and other representations to Buyer on terms acceptable to Buyer.

**7.6    Permits.**  Sellers shall have each obtained all consents, licenses and permits of third parties necessary for the performance by it of all of its obligations under this Agreement. The assignment of all Permits to Buyer, as necessary, shall be approved by all appropriate governmental authorities as of the Closing on terms acceptable to Buyer.

**7.7    Inspection of Acquired Assets.**  Buyer's pre-closing inspection of the Locations shall be satisfactory to Buyer in its sole discretion.

**7.8    Additional Documents.**  Sellers and/or the Companies shall have delivered all such other certificates and documents as Buyer or its counsel may have reasonably requested.

**7.9    Adverse Laws.**  Buyer shall not discover any laws, rules, regulations or ordinances governing use of the Locations or the business operations of the Companies in general, or any pending or threatened changes or modifications of the same, which Buyer believes will or may adversely effect the Locations or its anticipated business operations.

**Article 8 - Survival of Representations; Indemnification**

**8.1    Survival.**  The representations, warranties and covenants of the parties contained in this Agreement shall survive the Closing.

**8.2    Indemnification by Sellers.**  Sellers shall save, defend and indemnify Buyer, its officers, directors, shareholders, agents and representatives (collectively "Buyer") against, and hold Buyer harmless from, any and all liabilities, of every kind, nature and description, fixed or contingent (including, without limitation, reasonable

{R0227337.2}                                    10

counsel fees and expenses in connection with any action, claim or proceeding relating to such liabilities)  (i) arising from any obligations, liabilities, claims or payables of Jass Video incurred or arising from facts occurring prior to Closing, and/or (ii) Sellers' breach of any warranty or by any inaccurate or erroneous representation of Sellers contained herein (collectively "Damages"), and Buyer shall have the right to defend against any such claim itself with Sellers indemnifying Buyer for any and all costs incurred, including attorney's fees, and any judgment obtained against Buyer or any settlement thereof, or Buyer may require Sellers to defend against any such claim at Sellers' sole expense, with counsel acceptable to Buyer, and to pay any judgment or settlement resulting therefrom.  Buyer may by written notice to Sellers recover Damages due hereunder by offsetting such Damages against Buyer's obligation to Sellers described in Article 2, subsection (b), such being the promissory note attached as **Exhibit 2(b)**.  This indemnity shall survive termination of this Agreement.

**8.3** **Indemnification by Buyer.**  Buyer shall save, defend and indemnify Sellers against, and hold Sellers harmless from, any and all liabilities, of every kind, nature and description, fixed or contingent (including, without limitation, reasonable counsel fees and expenses in connection with any action, claim or proceeding relating to such liabilities) ("Damages") arising from the breach of any of Buyer's representations, warranties, covenants, or agreements contained or contemplated herein or hereby.  Sellers shall have the right to defend against any such claim itself with Buyer indemnifying Seller for any and all costs incurred, including attorney's fees, and any judgment obtained against Sellers or any settlement thereof, or Sellers may require Buyer to defend against any such claim at Buyer's sole expense, with counsel acceptable to Sellers, and to pay any judgment or settlement resulting therefrom.  This indemnity shall survive termination of this Agreement.

## Article 9.  Cooperation of the Parties After Closing

The parties shall cooperate upon and after Closing in effecting this transaction. Without limiting the generality of the foregoing, the parties shall (i) execute and deliver from time to time such further instruments of assignment, conveyance and transfer, (ii) sign any documents reasonably necessary or useful to ensure that all of the right, title and interest in and to the Interests vests in Buyer, (iii) take such other actions as may reasonably be required to consummate this transaction.  In the event that after Closing it is discovered that any matter has not been properly addressed due to the inadvertent omission of the parties, the parties shall cooperate in good faith with each other and act reasonably to address such matters in accordance with the spirit of this Agreement.

## Article 10 – Repurchase Rights

Any rights of Sellers, set forth in the Agreement of Purchase entered into between the parties on October 25, 2005 including the right to repurchase the Companies, are

{R0227337.2}

11

hereby released, extinguished and set aside so that Sellers shall henceforth have no such rights.

**Article 11 - General**

**11.1    Entire Agreement.**  This Agreement and the exhibits and schedules attached hereto constitute the entire understanding of the parties and supersedes any prior agreements or understanding written or oral between the parties with respect to the subject matter hereof.  This Agreement may be modified or amended only by a duly authorized written instrument executed by the parties thereto.

**11.2    Counterparts.**  This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original and all of which together shall constitute but one and the same instrument.

**11.3    Notices.**  Any notice or communication required or permitted hereunder shall be sufficiently given if sent by first class mail, postage prepaid to the following address:

|     |     |     |
| --- | --- | --- |
| (1) | To Buyer at: | Block & Barrell, Inc. <br> ATTN: Cindy Woodward <br> 184 Sherwood Drive <br> Bridgeport, WV 26330 |
|     | With a copy to: | David K. Higgins <br> Robinson & McElwee PLLC <br> P.O. Box 1791 <br> Charleston, WV 25326 |
| (2) | To Sellers at: | Samuel and Cheryl Jean Oliverio <br> 570 Glen Avenue <br> Bridgeport, WV 26330 |
|     | With a copy to: | Daniel Oliver <br> Eckert Seamans Cherin & Mellot, PLLC <br> 2400 Cranberry Square <br> Morgantown, WV 26508 |

Either party may change the address for notices hereunder by giving written notice of such change to the other party.  All notices shall be deemed given two (2) business days after deposit in the mail.

**11.4    Survivorship.**  All warranties, covenants, representations and guarantees shall survive the Closing and execution of the documents contemplated by this

Agreement. The parties hereto in executing, and in carrying out the provisions of, this Agreement are relying solely on the representations, warranties, and agreements contained in this Agreement or in any writing delivered pursuant to provisions of this Agreement or at the Closing of the transactions herein provided for and not upon any representation, warranty, agreement, promise or information, written or oral, made by any person other than as specifically set forth herein or therein.

**11.5   Law.** This Agreement shall be construed in accordance with the laws of the State of West Virginia.

**11.6   Additional Instruments.** The parties hereto shall deliver or cause to be delivered at Closing, and at such other times and places as shall be reasonably agreed upon, additional instruments as any party may reasonably request for the purpose of carrying out this Agreement.

**11.7   Benefits.** This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective legal representatives, assigns, or successors in interest.

**11.8   Invalid Provisions.** Any provision of this Agreement which may be determined by a competent authority to be prohibited or unenforceable shall be deemed modified so as to comply with all appropriate laws, but only to the extent necessary to prevent the invalidity of this Agreement or any other provision herein. To the extent permitted by applicable law, the parties to this Agreement waive any provision of law which renders any provision of this Agreement prohibited or unenforceable.

**11.9   Waiver.** No waiver of any breach of any covenant, condition, or agreement herein contained shall operate as a wavier of the covenant, condition, or agreement itself or of any subsequent breach thereof.

**11.10  Successors and Assigns.** The provisions of this Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and assigns, provided that neither party may assign, delegate or otherwise transfer any of its rights or obligations under this agreement without the consent of the other party.

**11.11  Confidential Information.** Sellers agree that they and their representatives will hold in strict confidence and will not use in any way all information and documents concerning or relating to the limited video lottery operations of the Companies and the sale price hereunder; _provided_, however, that Sellers' obligations under this Section to maintain such confidentiality shall not apply to any information or documents that are required by applicable law or order of court to be disclosed. The obligations of Sellers under this Section shall survive Closing.

**11.12  Exhibits.** All Exhibits annexed hereto and the documents and instruments referred to herein or required to be delivered simultaneously herewith or at the Closing

are expressly made a part of this Agreement as fully as though completely set forth herein, and all references to this Agreement herein or in any of such Exhibits, documents or instruments shall be deemed to refer to and include all such Exhibits, documents and instruments.

IN WITNESS WHEREOF the parties hereto have caused this agreement to be executed by their respective authorized representatives as of the day and year first written above.

BLOCK & BARREL, INC.

By: _____
Its President

_____
SAMUEL OLIVERIO

_____
CHERYL JEAN OLIVERIO

{R0227337.2}

14