# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**JEFFREY McDOUGAL,**

   **Plaintiff,**

*vs*.          **CIVIL ACTION NO. 1:08CV173**

**G & S TOBACCO DEALERS, L.L.C. d/b/a**
**HIGH LIFE LOUNGE; CYNTHIA ("CINDY")**
**WOODWARD, an individual,**

   **Defendants.**

## MEMORANDUM OPINION AND ORDER

This matter is pending before the Court for decision of Defendant/Third Party Plaintiffs' Motion For Summary Judgment, hereinafter referred to as "Woodward", [DE 82] and Third Party Defendants Samuel Oliverio and Cheryl Jean Oliverio's Motion For Summary Judgment, hereinafter referred to as "Oliverios", [DE 83], these cross motions for summary judgment being filed on the same date: January 8, 2010; G&S Tobacco Dealers, LLC and Cindy Woodward's Motion To Strike Oliverios' Reply To Response To Motion For Summary Judgment [DE 88][1]; and Third-Party Defendants Samuel Oliverio and Cheryl Jean Oliverio's Motion To Exceed Page Limit [DE 90].

The matters have been submitted for decision on the filings: Defendants/Third Party Plaintiff's Motion For Summary Judgment with exhibits [DE 82]; Response Of Third-Party Defendants Samuel Oliverio and Cheryl Jean Oliverio To G&S Tobbaco [sic] Dealers, LLC and Cindy Woodward's Motion For Summary Judgment [DE 84]; Reply To Response Of Third-Party Defendants Samuel Oliverio And Cheryl Jean Oliverio To G&S Tobacco Dealers, LLC And Cindy Woodward's Motion For Summary Judgement with exhibits [DE 86]; Third-Party Defendants Samuel Oliverio and Cheryl Jean Oliverio's Motion For Summary Judgment with exhibits [DE 83];

---

[1] Woodward contends Oliverios' Reply exceeds the allowed page limitations and was filed late.

Response Of Defendants/Third-Party Plaintiffs In Opposition To Third-Party Defendants Samuel Oliverio and Cheryl Jean Oliverio's Motion For Summary Judgment with exhibits [DE 85]; Third-Party Defendants' Reply To Third-Party Plaintiffs' Response To Third-Party Defendants' Motion For Summary Judgment with exhibits [DE 87]; G&S Tobacco Dealers, LLC and Cindy Woodward's Motion To Strike Oliverios' Reply To Response To Motion For summary Judgment [DE 88]; and Third-Party Defendants Samuel Oliverio and Cheryl Jean Oliverio's Motion To Exceed Page Limit [DE 90]; Third-Party Defendants Samuel Oliverio And Cheryl Jean Oliverio's Response To G&S Tobacco Dealers, LLC And Cindy Woodward's Motion To Strike Oliverio's Reply To Motion For Summary Judgment [DE 91]; Response of G&S Tobacco Dealers, LLC and Cindy Woodward In Opposition To Third-Party Defendants Samuel Oliverio And Cheryl Jean Oliverio's Motion To Exceed Page Limit [DE 92]; Reply To Third-Party Defendants Samuel Oliverio And Cheryl Jean Oliverio's Response To G&S Tobacco Dealers, LLC And Cindy Woodward's Motion To Strike Oliverios' Reply To Response To Motion For Summary Judgment [DE 93]; and the oral arguments of counsel for Woodward and Oliverios made during the scheduled and noticed hearing [DE 94 and 95] of April 19, 2010.

## I.

## Relevant Factual History

This matter began as Plaintiff's action against his employer [Woodward] for failure to pay in accord with the Fair Labor Standards Act and, as a consequence, for additional damages under the West Virginia Wage Payment and Collection Act. Once filed, the case expanded into contract claims for indemnification and contribution by the employer [Woodward] against the former owner [Oliverios] of the company that employed Plaintiff.

The following is a statement of the relevant and undisputed facts.

Prior to October 25, 2005, Oliverios owned 100% of G&S Tobacco Dealers, LLC [hereinafter called G&S]. By written agreement dated October 25, 2005 [hereinafter called 2005 Agreement] Oliverios sold 50% of their interest in G&S to Block & Barrel, Inc. [hereinafter called B&B], which was wholly owned by Woodward.

After Block & Barrel's purchase of 50% of G&S, Woodward and Oliverios were each elected managers of G&S [DE 87, Exhibit B]. However, Oliverios continued to manage the day to day operations of G&S including, but not limited to, establishing the wage and hour classifications and compensation policies of all employees.

On September 28, 2006 Jeffrey McDougal, hereinafter called "McDougal", began working as a manager for G&S at one of its business locations.

On July 17, 2007 B&B and Oliverios entered into a written agreement by which B&B [Woodward] purchased all of Oliverios' ownership interests in several companies then involved in the video gaming business[2] [video poker parlors] operating under the trade name of "High Life Lounge". This purchase included Oliverios' remaining ownership interest in G&S.

Woodward did not change the wage and hour classifications and compensation policies affecting location managers of G&S hired prior to July 17, 2007 until January 11, 2009.

While Woodward was not involved in the making of business decisions or giving directions to employees of G&S prior to July 17, 2007, Oliverios did not attempt to deprive Woodward of any

---

[2] Oliverios operated a number of video poker parlors, including one at Stonewood, West Virginia where McDougal was the unit manager. These video poker parlors were operated under and by G&S Tobacco Dealers, LLC dba High Life Lounge which was wholly owned by Oliverios until the sale of a 50% interest to Woodward in 2005 and partially owned by Oliverios between the 2005 agreement and the July 17, 2007 sale of the remaining 50% interest to Woodward.

information concerning the business from October 25, 2005 through July 17, 2007 [DE 83, Exhibit B].

Oliverios were not involved in the operations and management of G&S after the July 17, 2007 agreement was signed and the sale to B&B [Woodward] was closed.

McDougal filed suit against G&S and Woodward on August 26, 2008 claiming wages and damages for allegedly having been underpaid in violation of the Fair Labor Standards Act [FLSA] and for additional damages under the West Virginia Wage Payment and Collection Act [WPCA] for work performed from September 28, 2006 to the date of suit. Oliverios classified and paid McDougal as a manager. However, McDougal's job and work did not meet the qualifications of a manager under the law.

McDougal did not initially join Oliverios as defendants in his complaint. However, after Oliverios were brought into the action by Woodward as Third Party Defendants, McDougal filed a cross claim against Oliverios.

By letters dated September 12, 2008 and December 1, 2008 Woodward notified Oliverios of the McDougal suit and demanded that Oliverios provide a defense and indemnification under the agreement [DE 82, Exhibit C and D].

By letter dated July 15, 2009 addressed to Michelle Widmer Eby, former lawyer for Oliverios, Woodward's counsel placed Oliverios on notice that Woodward would be withholding payments on the contract purchase price for use in defending, paying or settling the claims being made by McDougal.[3]

---

[3] Issues surrounding Woodward's withholding of payments on the contract purchase price for use in defending, paying or settling the claims being made by McDougal are not before the Court for decision.

After the McDougal suit was filed, Woodward conducted an investigation. On January 11, 2009 Woodward reclassified all G&S High Life Lounge location managers as non-exempt hourly employees.

Subsequent to the filing of the McDougal suit, 22 similar suits[4] were filed by other G&S unit or location managers claiming wages due and owing under FLSA and WPCA as a result of alleged mis-classification of their position.

Of the 22 similar pending suits, 7 were filed by employees who were not employed by G&S prior to July 17, 2007 and while G&S was owned, whole or in part, by Oliverios.

Pursuant to F.R.Civ.P. 68, on October 14, 2009 Woodward made an offer of judgment to McDougal in the sum of $60,000 which was accepted. Pursuant to a request for the entry of judgment, dated October 22, 2009 [DE 72], judgment was entered against G&S and Woodward on October 23, 2009 [DE 73].

November 3, 2009 Oliverios settled all of McDougal's cross-claims for damages arising during the period of his employment with G&S while Oliverios had an ownership interest in the company, to wit: up to July 17, 2007. The settlement amount was $14,500. Oliverios did not admit any liability. [DE 83, Exhibit D].

On November 10, 2009, based on representations made that McDougal's cross-claims against Oliverios had been compromised and settled, those claims were dismissed with prejudice [DE 82, Exhibit J]. This left pending only the contribution and indemnification claims made in the Third-Party Complaint.

---

[4] None of the 22 additional suits are directly before the Court with respect to these cross motions for summary judgment.

In the Third-Party Complaint, Woodward and G&S claim: Count I – contractual indemnification and/or contribution from Oliverios based on alleged misrepresentations made by Oliverios in paragraph 5.5(A) of the 2007 agreement and failure to comply with the obligations to indemnify and defend under paragraph 8.2 of that agreement; Count II – damages for Oliverios failures as the alleged sole manager of G&S through July 20, 2007 to comply with the FLSA in violation of their common law and / or statutory duties of care and loyalty to G&S; and Count III – for common law indemnity and contribution.

<u>II.</u>

Contentions Of The Parties

A.    Woodward generally contends:

    1.    Oliverios represented and warranted that their business practices including their system for paying employees were lawful.

    2.    Oliverios breached their warranty in that their system for paying their unit or locality managers was in violation of the FLSA and, as a result, McDougal and other similarly situated unit or locality managers were not correctly paid under FLSA and in a timely fashion as required by WPCA.

    3.    Woodward had a "right to be indemnified, held harmless, and defended by Oliverios for any breach of any warranty or any inaccurate or erroneous representation contained within the Purchase Agreement including, without limitation, the payment of reasonable attorney fees, expenses, judgments and /or settlements."

    4.    Woodward's right of indemnity extends for violations of the FLSA and WPCA after July 17, 2007 even though Oliverios ceased to have any management or control over

the company and payment of its employees on that date.

5.      Even if the contract itself does not provide for indemnity under the undisputed facts of this case, as an agent, Oliverios breached their fiduciary duty to G&S to comply with the law in the payment of its employees in accord with the FLSA and WPCA.

6.      Oliverios are liable to Woodward under a theory of promissory estoppel for the judgment paid to McDougal and attorneys fees and costs incurred in defending McDougal's suit and interest on the whole thereof.

7.      Oliverios are liable to Woodward under contribution and indemnity for the judment paid to McDougal and for attorney fees and costs incurred in defending McDougal's suit and interest on the whole thereof.

8.      The duty to payment for attorneys fees or provide a defense under the agreement dated July 17, 2007 extends beyond the date of the agreement

B.      Oliverios Contend:

1.      They are not responsible to Woodward for post-closing damages because Woodwards' actions were a superseding cause of and substantial contribution to McDougal's damages.

2.      The plain language of the purchase agreement limits the Oliverios' liability to matters and events arising prior to closing.

3.      Public policy dictates against absolving Woodward of all responsibility for post-closing conduct.

4.      Agency law does not imply any duty on Oliverios to indemnify or defend Woodward against liabilities arising out of post closing operation of the business.

5.   Woodward cannot now assert promissory estoppel because it was not pled; because it is inapplicable and / or because Woodward cannot satisfy its elements.

## III.

## Issues

Simply stated, the issues pending before the Court are:

1.   Is there any pleaded theory which imposes a duty of indemnity or contribution on Oliverio's for Woodward's non-payment of McDougal for time worked after July 17, 2007 in accord with FLSA and/or WPCA?

2.   Do Oliverios owe Woodward a duty to defend against the claims being made by Woodward notwithstanding that those claims included claims for compensation unpaid in accord with FLSA and WPCA before and after July 17, 2007?

3.   Must Oliverios' reply to the Woodward response be stricken?

## IV.

## Discussion and Analysis

a.   Motion For Summary Judgment

Summary judgment is appropriate "if there is no genuine issue of material fact. Charbonnages de France v. Smith, 597 F.2d 406 (4th Cir. 1979). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment has the initial burden to show absence of evidence to support the nonmoving party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). This burden does not require the moving party to show evidence that proves absence of a genuine issue of material fact, but only to point out its absence. Id.

The burden then shifts to the party opposing the motion. The adverse party may not rest upon mere allegations or denials, <u>Anderson</u>, 477 U.S. at 248, and summary judgment is appropriate if the adverse party fails to show, under Rule 56, the existence of an element essential to that party's case. <u>Celotex</u>, 477 U.S. at 322. A mere scintilla of evidence supporting the case is insufficient. <u>Anderson</u>, 477 U.S. at 252. With regard to the burden on the adverse party, Rule 56(e) provides in part that:

> [W]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

In evaluating a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, <u>supra</u> at 255. The parties in this case stipulate and insist there are no issues of fact.

With these standards and the parties stipulation in mind, the Court will proceed with an analysis of the issues raised by the pending cross-motions for summary judgment.

b.    Cross Motions for Summary Judgment

A.    Is there any pleaded theory which imposes a duty of indemnity or contribution on Oliverio's for Woodward's non-payment of McDougal for time worked after July 17, 2007 in accord with FLSA and/or WPCA?

1.    With respect to Woodward's claim for indemnification, contribution and breach of statutory or agency duties, the doctrine of conflict or obstacle preemption is dispositive.

Woodward's state common law claims of contractual and implied indemnification and

contribution against Oliverios for wages and benefits damages not paid to McDougal after July 17, 2007 in violation of FLSA and WPCA are preempted by the doctrine of conflict or obstacle preemption.

On the same date the parties argued the instant cross-motions for summary judgment before this Court, the Fourth Circuit Court of Appeals published its decision in Equal Rights Center, et al v. Archstone Multifamily Series I Trust, et al, 09-1453.

The following facts and claims of Archstone are analogous to the facts and claims of the instant case: Archstone hired architect Bolton to design multi-family apartment buildings which Archstone then had various contractors build. Of the units constructed, Equal Rights Center, et al alleged 71 failed to be constructed so that they were accessible to persons with disabilities in violation of FHA and ADA. Archstone and the Equal Rights Plaintiffs entered into a Consent Decree which required Archstone to retro-fit the 71 units to make them ADA and FHA compliant and to pay 1.4 million in damages and attorneys fees and expenses. Bolton did not join in the settlement but later entered into a separate consent decree with the Equal Rights Plaintiffs which did not include any admission of liability. Archstone cross-claimed against Bolton seeking damages based on state law causes of action: express indemnity; implied indemnity; breach of contract; and professional negligence.[5] After lengthy discovery and immediately prior to the dispositive motions

_____

[5]

The express indemnity claim is based on the following promises of Bolton contained in the language in the services contract between Bolton and Archstone: to "make good any defects in its services resulting from the failure of the Architect or any of its Consultants to perform their respective services in a manner that is commensurate with the professional standard of care"; to "indemnify" Archstone "from and against all losses, claims, liabilities, injuries, damages and expenses, including attorneys' fees and litigation costs ... arising out of or resulting from or in connection with, the performance, or failure to perform, by the Architect or its employees"; that "designs or specifications furnished by the Architect found to be negligent will be promptly corrected by the Architect at no cost to the Owner, and the Architect will be responsible to the Owner for all damages, if any resulting from such defective designs or specifications"; and that "[a]ny designs or specifications furnished by the Architect which contain errors in coordination

deadline, Archstone sought leave to amend its cross-claim against Bolton to include a claim for contribution. Bolton objected. The District Court denied leave to amend. Thereafter the District Court granted Bolton summary judgment reasoning that Archstone's causes of action were indemnity and de facto indemnity claims for violations of the FHA and ADA and, because no right to indemnification exists under the ADA or FHA, the state law claims asserted by Archstone would be antithetical to the purposes of the FHA and ADA and therefore preempted under the doctrine of conflict or obstacle preemption. Archstone appealed. The Court of Appeals affirmed holding:

> Obstacle preemption applies "where state law; stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" .... where a state-law claim "interferes with the methods by which the federal statute was designed to reach [its] goal." (internal citations omitted).

> Obstacle preemption has been extended to state tort claims as well as positive enactments

of state law. *Id.* citing <u>Geier v. Am. Honda Motor Co.</u>, 529 U.S. 861 (2000).

> Finding Archstone's indemnification claims were preempted, the Court held:

> Here, Archstone sought to allocate the full risk of loss to Niles Bolton for the apartment buildings at issue. Allowing an owner to completely insulate itself from liability for an ADA or FHA violation through contract diminishes its incentive to ensure compliance with discrimination laws. If a developer of apartment housing, who concededly has a non-delegable duty to comply with the ADA and FHA, can be indemnified under state law for its ADA and FHA violations, then the developer will not be accountable for discriminatory practices in building apartment housing. Such a result is antithetical to the purposes of the FHA and ADA.

---

of details or dimensional errors will be promptly corrected by the Architect at no cost to the Owner."
    The implied indemnity claim rests on the principle that Bolton "bears a substantially greater share of responsibility for any failure of the Properties to be designed according to the requirements of the FHA and the ADA, given Bolton's superior knowledge, skill and involvement in the design of the properties."

    The breach of contract claim is based on claims that Bolton breached the warranties under its contracts with Archstone by failing to design properties that were ADA and FHA compliant.
    The professional liability claim was based on Bolton's failure to exercise that level of professional skill and care required of an architect to design the properties in question to be ADA and FHA compliant.

The Court further held Archstone's last minute attempt to amend its cross-claim was properly denied as prejudicial to Bolton. Moreover, the Court held: "As presented on appeal, the claim which Archstone presents in its amended complaint is a *de facto* indemnification claim, and such a claim is preempted under federal law. Therefore, allowing Archstone to amend under these circumstances to include a so-called contribution claim is, in any event, futile."[6]

A number of cases have addressed the issue of whether there is a right to contribution or indemnification for employers held liable under the FLSA and have held there is none. Herman v. R.S.R. Security Servs. Ltd., 172 F.3d 132, 143 (2nd Cir. 1999). Relying on the rationale expressed in Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO, 451 U.S. 77, 101 S.Ct. 1571 (1981),[7] the Herman Court held:

> There is no right of contribution or indemnification for employers found liable under the FLSA. The reasons are readily apparent. First, the text of the FLSA makes no provision for contribution or indemnification. Second, the statute was designed to regulate the conduct of employers for the benefit of employees, and it cannot therefore be said that employers are members of the class for whose benefit the FLSA was enacted. Third, the FLSA has a comprehensive remedial scheme as shown by the express provision for private enforcement in certain carefully defined circumstances. Such a comprehensive statute strongly counsels against judicially

---

[6]

Archstone argued that its contribution claim would seek to have Bolton responsible for 100% of the damages for the non-compliant properties Bolton designed. Relying on Baker, Watts & Co v. Miles & Stockbridge, 876 F.2d 1101, 1103 (4th Cir. 1989)(en banc), the Archstone Court reasoned that Archstone's position demonstrated a fundamental misunderstanding of the difference between Indemnification and contribution noting: "[i]ndemnification, of course, involves shifting the entire loss from one wrongdoer to another; contribution requires each wrongdoer to pay his proportionate – or *pro rata* – share of the adverse judgment".

[7]

Northwest unsuccessfully argued that the transit union should contribute to back pay due female cabin attendants under the Equal Pay Act and Title VII because the Union had collectively bargained for the wage differentials that were found to be violative of the Acts. The Court found the Union culpable in establishing the pay differentials for women doing the same work as men which led to the failure to pay but, found there was no expressed right of contribution in the Acts and held: "[T]here is no implied right of action under either Act for contribution and there is no federal common-law right to contribution from unions that allegedly bear at least partial responsibility for such statutory violations."

engrafting additional remedies.  Fourth, the Act's legislative history is silent on the right to contribution or indemnification. Accordingly, we hold that there is no right to contribution or indemnification for employers held liable under the FLSA.

In <u>Herman</u>, Portnoy contended that even if the FLSA did not permit contribution or indemnification, those claims could be prosecuted under New York law in much the same way Woodward contends she should be permitted to prosecute claims for indemnification against Oliverios under West Virginia law.  The <u>Herman</u> Court held: "This view of the law is flawed because the FLSA's remedial scheme is sufficiently comprehensive as to preempt state law in this respect." <u>Herman v. R.S.R. Security Servs. Ltd.</u>, *supra* at 144.

The Fourth Circuit held in the 1992 case of <u>Lyle v. Food Lion, Inc.</u> 954 F.2d 984, 987:  "In effect, Food Lion sought to indemnify itself against Tew for its own violation of the FLSA, which the district court found, and we agree, is something the FLSA simply will not allow.  As the fifth Circuit has noted, '[t]o engraft an indemnity action upon this otherwise comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution' and 'would undermine employers' incentives to abide by the Act. <u>LeCompt v. Chrysler Credit Corp.</u>, 780 S.2d 1260, 1264 (5th Cir. 1986).'"

In the instant suit, Oliverios were the employers of McDougal prior to July 17, 2007 and therefore responsible for any FLSA and WPCA claims arising for work performed by McDougal up to July 17th.  However, Woodward uses the warranty and indemnification clauses of the 2007 contract in an attempt to hold Oliverios liable for Woodward's failure to pay McDougal FLSA wages after July 17, 2007.  In the alternative to the contract indemnification claim, Woodward attempts to shift ultimate responsibility for payment of post July 17, 2007 FLSA wages to Oliverios using equitable principles.  In every event, Woodward seeks to delegate her duty to comply with the FLSA

13

to Oliverio for all wages and damages owed including those starting with the contract closing on July 17, 2007. This she cannot do. The FLSA does not contain language that provides for such indemnification or contribution. Woodward is not a member of the class protected by the FLSA. The FLSA is a comprehensive remedial statute designed to give employees the right to sue their employers for violations of the act. This is precisely what McDougal did in bringing his action against Woodward. Herman, *supra* at 144. This court cannot and will not engraft an indemnity clause on the FLSA where there is none. LeCompt, *supra* at 1264.

Accordingly, the Court concludes that Woodward's Third Party Plaintiff claims against Oliverios for indemnification or contribution to McDougal's FLSA claims arising post July 17, 2007 whether the same are based on contractual or equitable contribution, indemnification, breach of contract, breach of warranty, agency, or another state contract or equity claim, are preempted by the provisions of the FLSA; are antithetical to the purpose of the FLSA; undermine the public policy established by the FLSA; and are barred by the doctrines of Conflict and Obstacle Preemption.

Even if Woodward, in light of the absence of the availability of contribution and/or indemnification for the FLSA claims of McDougal, contends that she is entitled to contribution from Oliverios solely for WVPA damages claimed by McDougal, that contention also fails. The federal court only recognizes a right to contribution under state law "in cases in which state law supplie[s] the appropriate rule of decision." Northwest Airlines, Inc. v. Transport Workers Union of America, AFL-CIO, *supra* at 97. The West Virginia's Wage Payment and Collection Act (W.Va. Code, §21-5-1 et seq.) provides a comprehensive method for employees forcing their immediate or ultimate employer to timely pay them in accord with law. It does not provide authorization or a method or a rule of decision for allocating claims of contribution toward the liability of the employer to timely

14

pay his employee's wages.  Nor does it provide or recognize any method, contractual or equitable,

for shifting the burden of paying wages in accord with law from the employer to a third person.

> 2.      Claims made for common law breach of contract and warranty are disposed of by the
>
> plain and unambiguous language of the contract at issue.

Moreover, even if the Woodward claims against Oliverios were not so barred, the very

contract on which those claims are made militates against recovery for any FLSA and WPCA

damages accruing post July 17, 2007.

Under Paragraph 5.5(A) of the July 17, 2007 agreement in issue Oliverios

represented: "Each Company and Sellers **have complied** with all applicable laws, rules, regulations

and ordinances of any governmental agency or body with respect to the conduct of their business."

[emphasis added by the Court].

Paragraphs 8.1 and 8.2 of the same agreement provide:

> 8.1     Survival.   The representations, warranties and covenants of the parties
> contained in this Agreement shall survive the Closing.
>
> 8.2     Indemnification by Sellers.  Sellers shall save, defend and indemnify Buyer,
> its officers, directors, shareholders, agents and representatives (collectively
> "Buyer") against, and hold Buyer harmless from, any and all liabilities, of
> every kind, nature and description, fixed or contingent (including, without
> limitation, reasonable counsel fees and expenses in connection with any
> action, claim or proceeding relating to such liabilities) (i) arising from any
> obligations, liabilities, claims or payables of Jass Video incurred or arising
> from **facts occurring prior to Closing**, and/or (ii) Sellers' **breach of any
> warranty or by any inaccurate or erroneous representation of Sellers
> contained herein** (collectively "Damages"), and Buyer shall have the right
> to defend against any such claim itself with Sellers indemnifying Buyer for
> any and all costs incurred, including attorney's fees, and any judgment
> obtained against Buyer or any settlement thereof, or Buyer may require
> Sellers to defend against any such claim at Sellers' sole expense, with counsel
> acceptable to Buyer, and to pay any judgment or settlement resulting
> therefrom.   Buyer may by written notice to Sellers recover Damages due
> hereunder by offsetting such Damages against Buyer's obligation to Sellers
> described in Article 1, subsection (b), such being the promissory note
> attached as **<u>Exhibit 2(b)</u>**.  This indemnity shall survive termination of this

agreement. [emphasis added by the Court].

"A valid written instrument which expresses the intent of the parties in plain and unambiguous language is not subject to judicial construction or interpretation but will be applied and enforced according to such intent." McCraw v. American Tobacco Co., 224 W.Va. 211, 681 S.E.2d 96 (2009) citing: Cotiga Development Co. v. United Fuel Gas Co., 147 W.Va. 484, 128 S.E.2d 626 (1962). The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The question as to whether a contract is ambiguous is a question of law to be determined by the court. Berkeley County Public Service Dist. v. Viro Corp. of America, 152 W.Va. 252, 162 S.E.1d198, 200 (1968) citing: Whiting Stoker Co. v. Chicago Stoker Corporation, 171 F.2d 248 (7th Cir. 1949).

The language of the July 17, 2007 contract is clear and unambiguous. In the contract, Oliverios warranted they "have complied with all applicable laws, rules, regulations and ordinances of any governmental agency or body with respect to the conduct of their business." By the words "have complied", it is plain the Oliverios were warranting compliance up to and as of the date of the contract. There is no language that they would so comply post closing when they no longer had any ownership interest in or control over the operations of the businesses they sold to Woodward. It is undisputed that Woodward took full ownership and control of the businesses from Oliverios on July 17, 2007. Woodward therefore had the duty to see that the wages accruing to employees from July 17, 2007 forward were properly paid.

The mere fact that Woodward attempts to extend Oliverios' liability to cover wages after July 17, 2007 claiming Oliverios' representation they were in compliance with laws caused Woodward to have a false sense of security and to follow in Oliverios ill fated footsteps with respect to how managers were paid after July 17th does not make the contract ambiguous. Public Service Dist. v.

16

Viro Corp. of America, *Id.*

To so hold permits Woodward to make a defacto claim for indemnification or contribution where a direct claim for such relief is not permitted. It also undermines the employers' (Woodward's) incentives to abide by the Act. LeCompt v. Chrysler Credit Corp., *supra.* It is also a misapplication of the plain and unambiguous language of the contract.

It is undisputed that Oliverios breached the warranty in the 2007 contract that they had complied with all applicable laws with respect to the conduct of the businesses. The Oliverios failed to properly pay wages due employees for work performed prior to July 17, 2007. Under the October 25, 2005 agreement wherein Oliverios sold 50% of their interest to Woodward retaining the remaining 50%, the agreement provided that Oliverios would "remain primarily responsible for the day-to-day operations of the companies for so long as Seller [Oliverios] owns an interest in the Companies." In fact, Oliverios did continue to run the day to day operations of the companies until they sold their remaining interest to Woodward on July 17, 2007. While each contract (2005 and 2007) stands on its own, this language in the 2005 contract clearly shows the intent that Oliverios remain responsible for operation of the businesses and, by extension, responsible for any failure to pay (McDougal) FLSA wages and WPCA damages up to July 17, 2007. Their accountability for this particular failure survives the July 17, 2007 closing. However, Oliverios are not liable for Woodward's failures to properly and timely pay employees for work performed after July 17, 2007. With the execution of the contract on July 17, 2007, Oliverios ceased to have any ability to control the day to day operations of the businesses.

3.    Promissory Estoppel

Promissory Estoppel is not pled as a theory of liability or basis of recovery in the Third-Party Complaint. Therefore, it is not considered.

During oral argument of the cross-motions for summary judgment, counsel for Woodward and G&S all but conceded that the success or failure of their indemnification claim rises or falls on the Court's interpretation of the 2007 contract.

In the absence of the contract, promissory estoppel could have been pleaded. However, there is a valid and enforceable contract on which Woodward and G&S rely. Everette v. Brown, 174 W.Va. 35, 321 S.E.2d 685, 686, syl. pt. 3 (1984).

Accordingly, equitable claims of promissory estoppel are unavailing to Woodward.

B.    Did Oliverios owe Woodward a duty to defend against the claims being made by Woodward notwithstanding that those claims included claims for compensation unpaid in accord with FLSA and WPCA before and after July 17, 2007?

Paragraph 8.2 of the 2007 contract is not ambiguous with respect to Oliverios' duty to defend Woodward. McCraw v. American Tobacco Co., *supra.*

Pursuant to paragraph 8.2 (quoted above), Oliverios assumed a contractual obligation to defend Woodward against any claim for liability arising from its breach of warranty or by any "inaccurate or erroneous representation" Oliverios made in the agreement. This obligation included "indemnifying [Woodward] for any and all costs incurred, including attorney's fees, ...." Under the agreement Woodward could require Oliverios to defend with counsel acceptable to Woodward or simply hire their own counsel and thereafter seek reimbursement for the same.

For purposes of these cross-motions for summary judgment, there is no dispute that Oliverios breached paragraph 5.5(A) of the agreement. As previously noted, up to the and including the July 17, 2007 closing, Oliverios had not complied with "all applicable laws, rules, regulations, and ordinances of any governmental agency or body with respect to the conduct of their business" as

represented. Oliverios were not in compliance with FLSA wage payments to McDougal and as a result were not in compliance with WPCA obligations.

It is undisputed after McDougal filed his complaint on August 28, 2008, Woodward sought defense and indemnification from Oliverios:

1) Letter dated September 12, 2008 stating "pursuant to the terms of the agreement we hereby seek a defense and indemnification. Please advise if you are agreeable to indemnifying us in this matter." [DE 82, Exhibit C]

2) Letter dated December 1, 2008 stating "As per the Purchase Agreement entered into on or about July 17, 2007, including, without limitation, sections 5.5(A) and 8.2, G&S and Woodward hereby notify you of their demand to be defended, indemnified, and held harmless from any and all liabilities of every kind, nature and description arising from the above captioned lawsuit at your sole expense to the fullest extent allowed by that Agreement including, without limitation, attorney's fees, any judgment obtained by McDougal, and/or any settlement paid to resolve this case." [DE 82, Exhibit D].

The Court finds and concludes that: 1) McDougal's filing suit against Woodward et als under the FLSA and WPCA for sums due, including sums due up to the date of the contract closing (July 17, 2007), triggered Oliverios' obligation to provide or pay for Woodward's defense against those claims; 2) Woodward promptly notified Oliverios' of the pendency of the McDougal suit and sought defense and indemnification from Oliverios; 3) Oliverios' did not provide a defense and have not paid the Woodward's costs of defense; and 4) Oliverios' duty to provide or pay for Woodward's defense against McDougal's claims for sums due under FLSA and not paid in accord with WPCA

up to and including the July 17, 2007 contract closing, survives the closing.

c.     Motion to strike

Woodward moved to strike Oliverios' reply to Woodward's response to the motion for summary judgment because the reply was filed outside of the time limits prescribed under L.R.Civ.P. 7.02(b)(2) and exceeded the 15 page limit established under L.R.Civ.P. 7.02(b)(3).

L.R.Civ.P. 7.02(b)(2), as applicable at the time of these filings, provides: "(2) <u>Memoranda in Response</u>: The memoranda in response may not exceed 25 pages and is subject to the restrictions set forth in LR Civ P 7.02(a) regarding paper, font size, and line spacing." L.R.Civ.P. 7.02(b)(3), as applicable at the time of these filings, provides: "The reply memoranda may not exceed 15 pages, subject to the restrictions set forth in LR Civ P 7.02(a) regarding paper and font size and line spacing."

The Third-Party Defendants' Reply To Third-Party Plaintiffs' Response To Third-Party Defendants' Motion For Summary Judgment was filed February 2, 2010 and is 22 pages in length, excluding exhibits.  No prior permission to exceed the 15 page limitation or to file out of time was sought by Third-Party Defendants until after the motion to strike was filed..

Notwithstanding the untimeliness and excessiveness of paper, Woodward's arguments are largely rendered moot because of the Court's reliance on the doctrine of obstacle preemption in deciding the issue of the parties ability to contractually allocate risks amongst themselves.  By relying on obstacle preemption, the Court found it unnecessary to consider the arguments raised by Oliverios in the challenged reply.

The Court is a strong believer that the rules of the Court exist to create order out of chaos. Therefore, it is imperative that those rules be followed.

For that reason alone, the Court strikes Oliverios' reply in accord with Woodward's motion.

## V.
### Decision

For the reasons stated herein Defendants/Third Party Plaintiffs' Motion For Summary Judgment [DE 82] is **DENIED IN PART AND GRANTED IN PART AS FOLLOWS** and Third-Party Defendants Samuel Oliverio And Cheryl Jean Oliverio's Motion For Summary Judgment [DE 83] is **GRANTED AS FOLLOWS[8]:**

For FLSA and WPCA damages for work performed by McDougal, Woodward's claims of contractual or equitable complete indemnification and contribution from Oliverios' [under DE 82] are **DENIED** and Oliverios are **GRANTED JUDGMENT AGAINST WOODWARD AS TO THOSE CLAIMS ONLY** because they are: barred by the existence of the contract, the plain and unambiguous language of the contract, and they are preempted by the FLSA, each (contract and FLSA) imposing liability on Oliverios, as the sole manager and operator of the business up to and including July 17, 2007, for payment of McDougal in accord with FLSA and consequently to be responsible for WPCA claims for wages not timely paid during that period and imposing liability on Woodward, as the sole manager and operator of the business after July 17, 2007, for

---

[8] There is no inconsistency in the Court's ruling. DE 83 does not mention the issue of Oliverios' contractual obligation to defend or pay for the defense of claims made against Woodward for breaches caused by Oliverios. DE 83 only seeks summary judgment on the issues of indemnification and contribution for the WPCA and FLSA claims made by McDougal against Woodward. Accordingly, granting Oliverios' motion for summary judgment [DE 83] is wholly consistent with the Courts denial in part of Woodward's motion for summary judgment [DE 82].

payment of McDougal in accord with FLSA and consequently to be responsible for WPCA claims for wages not timely paid during that period.

To the extent Defendants/Third Party Plaintiffs' Motion For Summary Judgment [DE 82] seeks Court determination that the July 17, 2007 contract requires Oliverios to provide Woodward with a defense or reimburse Woodward for the defense made, said **Motion [DE 82] is GRANTED**. With respect to the amount Oliverios may be obligated to pay Woodward under the contractual promise to provide or pay for defense, no evidence or facts have been submitted. Accordingly, Defendants/Third Party Plaintiffs' Motion For Summary Judgment **[DE 82] shall remain on the docket of the Court** for determination of the amount, if any, that Oliverios owe Woodward under the contractual obligation to provide or pay for the defense of the McDougal claims.

G&S Tobacco Dealers, LLC and Cindy Woodward's Motion To Strike Oliverios' Reply To Response To Motion For Summary Judgment [DE 88] is **GRANTED,** Third-Party Defendants' Reply To Third-Party Plaintiffs' Response To Third-Party Defendants' Motion For Summary Judgment [DE 87] is **STRICKEN.**

The Clerk is directed to remove DE 83 and DE 88 from the docket of motions actively pending before the Court. The Clerk is further directed to leave DE 82 on the docket of motions actively pending before the Court, the same not having been fully decided.

It is so **ORDERED.**

DATED: April 30, 2010

*John S. Kaull*
JOHN S.  KAULL
UNITED STATES MAGISTRATE JUDGE